**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TEAMSTERS HEALTH & WELFARE TRUST FUND OF PHILADELPHIA AND VICINITY, *et al.*,** | : | **CIVIL ACTION** |
| ***Plaintiffs,*** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **REGIONAL PRODUCE COOPERATIVE CORP., *et al.*,** | : | **NO. 26-0468** |
| ***Defendants.*** | : | |

**MEMORANDUM**

**KENNEY, J.** **OCTOBER 26, 2026**

This case arises out of a dispute over Local Union No. 929's (the "Union") health benefits plan. Both parties have cross-moved for summary judgment on the issue of whether Plaintiffs' claims are barred by the equitable doctrine of *res judicata*. *See* ECF Nos. 24–25. For the reasons set forth below, the Court will **DENY** Defendants' Partial Motion for Summary Judgment (ECF No. 24), and **GRANT** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 25). The Court finds that Plaintiffs' claims are not barred by *res judicata*.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations and citation omitted).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant meets its burden, the non-moving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations and citation omitted) (emphasis omitted); *see also* Fed. R. Civ. P. 56(c)(1). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[I]n assessing the genuineness of a potential factual dispute, inferences from the underlying facts should be drawn in favor of the nonmoving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (citations omitted). In addition, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are functions that are reserved for the jury, rather than the Court. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587 (internal quotations and citation omitted). This standard does not change when both parties move for summary judgment on an issue. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).

Where applicable, a party may move for summary judgment on a claim based on a pure question of law. *See Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991). While district courts should not "needlessly" encourage "piecemeal litigation[,]" motions for summary judgment may be limited to certain issues in the case, such as only certain claims or "'part[s] of [a] claim or defense.'" *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund.*, 778 F.3d 593, 606 (7th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). Such a motion "can serve [as] a useful brush-clearing" of the case "even if it does not obviate the need for a trial." *See id.*

## II. DISCUSSION

The Court writes for the benefit of the parties and assumes their familiarity with the facts and procedural history of the case. Following a May 14, 2026 pretrial conference, and prior to expending significant resources on discovery, the Court ordered the parties to brief the issue of whether the doctrine of *res judicata* bars Plaintiffs' claims. *See* ECF No. 17. The parties' respective Motions are fully briefed and before the Court. *See* ECF Nos. 24–25; *see also* ECF Nos. 26–27, 30–32.

"Under the doctrine of claim preclusion," also known as *res judicata*, "a prior final judgment forecloses successive litigation of the very same claim." *In re Adams*, 151 F.4th 144, 153 (3d Cir. 2025) (internal quotations and citation omitted); *see also Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. – Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992) (explaining that claim preclusion "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding"). Claim preclusion applies when there is: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Id.*

Regarding the second element, courts assess whether a nonparty is in "privity" with a party to a prior litigation "under the rubric laid out" in *Taylor v. Sturgell*, 553 U.S. 880 (2008). *See Doe v. Hesketh*, 828 F.3d 159, 172 (3d Cir. 2016). There are six exceptions under which "[a] nonparty will be found to be in privity with a party to a proceeding." *Id.* (listing the six exceptions). Here, Defendants only argue that the fourth exception applies, so the Court focuses its analysis on that particular exception where: "the nonparty assumes control over the litigation in which the

judgment is rendered[.]" *Id.* (internal quotations and citation omitted).[1] As the party seeking to apply claim preclusion, "an affirmative defense[,]" Defendants have the burden of proving that this exception has been satisfied. *Taylor*, 553 U.S. at 907.

The "control" exception applies to "the persons for whose benefit and at whose direction a cause of action is litigated[,]" such as "[o]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own." *Montana v. United States*, 440 U.S. 147, 154 (1979) (internal quotations and citation omitted). The Third Circuit has explained that having "'control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced [on] behalf of the party to the action[,]'" and the nonparty "'must also have control over the opportunity to obtain review.'" *Marshak v. Treadwell*, 240 F.3d 184, 195 (3d. Cir. 2001) (quoting Restatement (Second) of Judgments § 39 cmt. c (1982)); *see also* Restatement (Second) of Judgments § 39 (1982) ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."). "Because such a person has had 'the opportunity to present proofs and argument,' he has already 'had his day in court' even though he was not a formal party to the litigation." *Taylor*, 553 U.S. at 895 (quoting Restatement (Second) Judgments § 39 cmt. a, at 382 (1982)); *see also Trs. of Gen. Assembly of Church of Lord Jesus*

[1] Plaintiffs argue at length that they have different interests than the Union, *see* ECF No. 25-2 at 11–13, and thus appear to be arguing that Defendants fail to satisfy the third exception to non-party claim preclusion—i.e., where "the nonparty was adequately represented by someone with the same interests who was a party." *Doe*, 828 F.3d at 172 (internal quotations and citation omitted) (cleaned up). But Defendants effectively concede that the third exception is not satisfied and only make arguments regarding the control exception. *See* ECF No. 30 at 4–5; *see also* ECF No. 24-2 at 15–17. Accordingly, the Court need not address whether the third exception has been met.

*Christ of Apostolic Faith, Inc. v. Patterson*, No. 21-1662, 2021 WL 6101254, at *5 (3d Cir. Dec. 21, 2021) ("Control in this context refers to control of the litigation.").

In *Marshak*, for example, the Third Circuit found that "testif[ying] in the prior case and [having] an interest in the outcome"—"[w]ithout more"—were "plainly insufficient to permit a reasonable inference that [a nonparty] exercised any control over litigation decisions or strategy." 240 F.3d at 196. That level of involvement did not adequately demonstrate that the non-party in the prior case "wielded a 'laboring oar'" or "exercised any control over the prior litigation." *Id.* at 195–96 (citation omitted); *see also Trs. of Gen. Assembly of Church of Lord Jesus Christ of Apostolic Faith, Inc.*, 2021 WL 6101254, at *5 (finding that the district court "did not clearly err in concluding that the Church and Corporation were neither parties nor privies" where, "[o]ther than noting that the Church and Corporation paid Shelton's legal fees, Patterson [did] not provide any evidence that they controlled Shelton's litigation strategy").

By contrast, in *Charter Oak Fire Insurance Co. v. Sumitomo Marine and Fire Insurance Company, Ltd.*, the Third Circuit found that a non-party insurance company's "participation in the state court litigation clearly rose to the level of control necessary to apply preclusion rules." 750 F.2d 267, 271 (3d Cir. 1984). There, the non-party was extensively involved in the underlying litigation, "asserted the same claim for indemnity in its cross-claim" that it was pursuing again in district court, and had the same counsel as the defendant in the state court action, who "controlled [the defendant's] defense." *Id.* at 269–70; *see also Montana*, 440 U.S. at 155 (finding that "the United States plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation" where it "(1) required the . . . lawsuit to be filed; (2) reviewed and approved the complaint; (3) paid the attorneys' fees and costs; (4) directed the appeal . . .; (5) appeared and submitted a brief

as *amicus* in the Montana Supreme Court; (6) directed the filing of a notice of appeal to [the U.S. Supreme Court]; and (7) effectuated [the] abandonment of that appeal" (citation omitted)).

With this framework in mind, the Court finds that, on the factual record that is before it, Plaintiffs did not assume the requisite control over the arbitration proceeding as a matter of law, such that the equitable doctrine of *res judicata* now bars Plaintiffs' claims.

As an initial matter, Plaintiff Teamsters Health & Welfare Trust Fund of Philadelphia and Vicinity (the "Fund") "is not party to" the Collective Bargaining Agreement ("CBA") "between Defendants and the Union; rather, the Fund is considered a third-party beneficiary under the CBA." ECF No. 24-3 ¶ 7; *see also* ECF No. 24-6 at 2–40. The CBA contains a "Grievance-Arbitration Procedure" in the event that there are disputes as to whether a provision of the CBA has been violated. ECF No. 24-3 ¶¶ 12–15; *see also* ECF No. 24-6 at 27–29. The CBA's Grievance-Arbitration Procedure requires the Union to bring a written grievance to Defendants' attention and to hold a meeting. ECF No. 24-3 ¶¶ 13–14. If the grievance remains unresolved after that meeting, either the Union or Defendants can "submit the disputed matter to arbitration." *Id.* ¶ 15. The CBA provides that the "decision of the arbitrator shall be final and binding upon the employee, the Union, and the Employer." ECF No. 24-4 ¶ 11 (internal quotations and citation omitted). Moreover, the CBA "does not grant any rights or standing to the Fund . . . to avail itself of the grievance and arbitration procedure." ECF No. 25-3 ¶ 3.

Here, the undisputed facts demonstrate that the Union maintained control over the litigation decisions and strategy for the Grievance-Arbitration Procedure. When Defendants sought to notify the Union on July 15, 2025 that they would be "exercising the option to exit the Fund . . . in favor of a new health benefits plan (the 'Employers' Plan')[,]" they communicated directly with the Union's President and Principal Officer, Rocky Bryan, Jr. ECF No. 24-3 ¶ 17; *see also* ECF No.

24-6 at 42–51. That same day, Mr. Bryan responded by email that if Defendants were "attempt[ing] to substitute the Fund's plan with an inferior plan the Union would take legal action." ECF No. 24-3 ¶ 20; *see also id.* ¶ 22 (stating that the Union "WILL use all its resources economically and legally"); *id.* ¶ 24 (same); ECF No. 24-6 at 53–54. Accordingly, from the start of Defendants' outreach regarding changing the Union's benefits plan, the Union's President indicated an intent to take legal action. ECF No. 24-3 ¶¶ 20, 22, 24. On July 18, 2025, Mr. Bryan then made the decision to initiate the Grievance-Arbitration Procedure by "forward[ing]" Defendants "a grievance form[,]" in which "Mr. Bryan contended that Defendants intended to substitute the Fund's plan with an inferior health and welfare plan." *Id.* ¶¶ 29–30; *see also* ECF No. 24-6 at 65–66. The record thus reflects that Mr. Bryan and the Union were driving the decision to contest the adequacy of Defendants' new benefits plan.

At the August 5, 2025 grievance meeting, Mr. Bryan "abruptly left the meeting" shortly after it began, so "the grievance was not discussed." ECF No. 24-3 ¶¶ 51–52. Following the meeting, Defendants argued that they "considered the matter closed" because "Mr. Bryan abruptly ended the grievance meeting before the participants could discuss the grievance and the Union had not asked for additional time to discuss the grievance." *Id.* ¶¶ 55–56. Accordingly, the fact that the meeting did not proceed to a substantive discussion of the two benefits plans in Mr. Bryan's absence further demonstrates that, at bottom, the Union was in control of the Grievance-Arbitration Procedure.

Next, the Union was the party that "filed a demand for arbitration against [Defendants] alleging that the Defendants violated the CBA by substituting a health and welfare plan that was not equal or superior to the Fund's plan." *Id.* ¶ 58; *see also* ECF No. 24-6 at 87–90. In advance of the arbitration, "[Defendants] and the Union stipulated that the issue to be discussed at the

hearing was whether 'the grievance [was] procedurally arbitrable[.]'" ECF No. 24-3 ¶ 61 (citation omitted). The Union, therefore, likewise made the decision to proceed to arbitration and had control over the strategy as to what issues the arbitrator would hear. In addition, when the arbitrator issued his decision that the Union's grievance was not procedurally arbitrable, there is no indication that Plaintiffs had the ability to appeal that decision, given that they have no "rights or standing . . . to avail [themselves] of the grievance and arbitration procedure." *See* ECF No. 25-3 ¶ 3; *see also Marshak*, 240 F.3d at 195 (explaining that the nonparty "must also have control over the opportunity to obtain review" (internal quotations and citation omitted)).

To be sure, the stipulated facts show that Plaintiffs were involved in the Grievance-Arbitration Procedure. Once Plaintiff Maria Scheeler, the Fund's Administrator, "learned that the Defendants intended to exit the Fund, she told Mr. Bryan that the Fund would need to compare the two plans, which included involving the Fund's actuaries to create a comparison between the two plans." ECF No. 24-3 ¶ 25. Thereafter, Ms. Scheeler assisted the Union in gathering information to evaluate the two plans and in developing responses to Defendants' requests for information. *Id.* ¶¶ 26–27, 31, 35–36, 38, 40, 53. However, Mr. Bryan and the Union's counsel were involved during this process, *see, e.g.*, *id.* ¶¶ 27, 40, 42–43, 47, and the Union still maintained control over the strategy to limit the information that was shared with Defendants. *See* ECF No. 24-4 ¶ 5 ("Here is the response that legal stated that we should use *as per Rocky's request*, we are providing the bear [sic] minimum required under law." (internal quotations and citation omitted) (emphasis added)).

Ms. Scheeler also planned to meet with officers from the Union "to discuss her assessment" of the two plans and was supposed to have a testifying role at the Union's grievance meeting. ECF No. 24-3 ¶¶ 43, 47 (internal quotations and citations omitted). The Union's counsel viewed Ms.

Scheeler "'as the Union's health and welfare expert,'" stating that she would "'be the best at articulating the Union's concerns about the proposed plan.'" *Id.* ¶ 47 (quoting ECF No. 24-6 at 71). Moreover, Ms. Scheeler attended the Union's August 5, 2025 grievance meeting, and the Union's October 8, 2025 arbitration hearing, and testified at the arbitration hearing. *Id.* ¶¶ 49, 62, 64–66. However, as discussed above, "testif[ying] in the prior case and [having] an interest in the outcome"—"[w]ithout more"—are "insufficient to permit a reasonable inference that [a nonparty] exercised any control over litigation decisions or strategy." *Marshak*, 240 F.3d at 196.

Overall, the stipulated facts demonstrate that the Union was coordinating with Plaintiffs on comparing the two benefits plans. But on the factual record before the Court, Plaintiffs did not "have effective choice as to the legal theories and proofs to be advanced [on] behalf of" the Union and Plaintiffs were not in control of the Union's litigation strategy. *Id.* at 195 (internal quotations and citation omitted). "A mere tightly coordinated litigation strategy between the parties is insufficient" to demonstrate control. *See Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 711 (7th Cir. 2024); *see also Williams v. Mastronardi Produce-USA, Inc.*, 189 F.4th 553, 561 (6th Cir. 2026) (finding that "the facts suggest coordination—not control"—which is insufficient to satisfy "the high bar of control").[2] Accordingly, the Court finds that the doctrine of *res judicata* does not bar Plaintiffs' claims as a matter of law. The Court will, therefore, deny Defendants' Partial Motion for Summary Judgment (ECF No. 24), and grant Plaintiffs' Motion for Partial Summary Judgment (ECF No. 25).[3]

---

[2] Because the Court finds that Defendants have not satisfied the privity element, the Court need not address the other two elements of *res judicata*.

[3] In a footnote to their Statement of Additional Material Facts, Defendants state: "[i]f the court does not find the facts of the Fund's participation in the Grievance process sufficient to establish privity on this limited factual record, Defendants request that the Court defer such a decision until after discovery has been completed." ECF No. 24-4 ¶ 10 n.1.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Partial Motion for Summary Judgment (ECF No. 24), and will grant Plaintiffs' Motion for Partial Summary Judgment (ECF No. 25). An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**

---

The Court extended the parties' briefing schedule at the parties' request so that Defendants could conduct discovery that was targeted towards addressing the elements of *res judicata*. *See* ECF Nos. 18–19. In doing so, the Court expected that the parties would seek out and produce all documents relevant to that defense. In essence, Defendants seek to preserve a prophylactic "'second bite of the apple.'" ECF No. 24-2 at 5. Should additional, *material* documents come to light during discovery that were not previously produced and support the control exception, Defendants can alert the Court and the Court *may* consider whether to allow Defendants an opportunity to renew their motion for summary judgment on the issue of *res judicata*. Any such request would need to be accompanied by a detailed proffer explaining how the additional documents bear on the Court's analysis of *res judicata*.